**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THOMAS JERMAINE HATHORN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-5782** |
| **MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC, ET AL.** | **SECTION "B"(5)** |

## ORDER AND REASONS

Defendant EMR, Inc., d/b/a Southern Recycling, LLC and/or Southern Scrap Recycling's (SOREC) motion for summary judgment is before the Court. Rec. Doc. 35. Plaintiff timely filed an opposition. Rec. Doc. 56. Defendant then sought, and was granted leave, to file a reply. Rec. Doc. 61. For the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 35) is **GRANTED** and Plaintiff's claim against Defendant SOREC is **DISMISSED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Thomas Hathorn worked for Defendant Marquette Transportation Company Gulf-Inland, LLC on the M/V Good Shepard, a tug boat. *See* Rec. Doc. 23 at ¶¶ 5, 7. On May 28, 2015, the Good Shepard arrived at Defendant SOREC's facility in Gulfport, Mississippi, to pick up a barge. *See* Rec. Doc. 56-1 ¶ 16. The barge had been at SOREC's facility since May 21, 2018 and was loaded with just over 1,000 metric tons of scrap metal. *See* Rec. Doc. 56-1 ¶¶ 4, 5. The barge had the capacity to hold 1,400 metric tons of

1

material. *See id.* ¶ 5. Scrap material is loaded into the center of the barge; the area containing the scrap material is surrounded by a wall called a coaming barrier. *See* Rec. Docs. 35-4 at 11-40; 56-3 at 17. A walkway wraps all around the barge on the outside of the coaming barrier. *See id.*

Before loading the barge, SOREC baled the scrap metal, which involves compressing loose scrap metal into cubes. *See* Rec. Doc. 56-3 at 10-13. The cargo on the barge also included cars that had themselves been compressed in the baler. *See id.* at 14. Each bale weighs approximately 2,000 pounds and is "compact and dense," making it difficult to break a piece out of the bale. *See id.* at 12. The material on the barge was "domed," which means that the higher layers of scrap metal were set back from the edge of the barge more than the lower levels were. *See id.* at 8. The material was six to eight feet high at the center of the barge and "slightly lower" at the edges. *See id.* at 17. There was no loose material on top of the barge; all of the material stacked above deck had been compacted into bales. *See id.* at 6. The captain of the Good Shepard testified that the barge was loaded to the maximum height for this type of cargo. *See* Rec. Doc. 56-5 at 5.

After loading the barge, SOREC employees checked the barge for hazards, including materials on the walkway around the edge of the barge. *See* Rec. Doc. 56-1 ¶¶ 6, 8, 9. Chris Covington, the deputy manager of the SOREC facility in Gulfport, also photographed

2

the barge after loading was complete. *See* Rec. Doc. 35-4 at 34-40. No tailpipe is visible on the walkway in the photos. *See id.* Covington's affidavit states that, in his opinion, the barge "was loaded properly" and that the "load was typical and customary . . . ." *Id.* at 3. Marquette also has a policy of performing safety inspections when accepting new barges. *See* Rec. Doc. 56-1 ¶ 11. Two Marquette employees performed a visual inspection of the barge before setting sail; the inspection included checking the walkways for hazards. *See* Rec. Doc. 61-2 at 8.

After picking up the barge on May 28, 2015, the Good Shepard traveled to the Biloxi channel and picked up three other barges. *See* Rec. Doc. 56-1 ¶¶ 17, 18. This involved disconnecting, moving, and reconnecting the barge at issue in this case. *See id.* ¶¶ 18, 24, 25. Between nine and twenty hours later, at between 3:40 a.m. and 5:30 a.m. on the morning of May 29, 2015, the Good Shepard arrived at its destination, a SOREC facility in New Orleans. *See id.* ¶¶ 21-22. The barge, including its walkway, was inspected two more times during the voyage. Rec. Doc. 61-2 at 11, 20, 22-23, 27. The last inspection prior to the accident was conducted by Plaintiff. *See id.* at 22.

When the Good Shepard arrived, the crew then separated the barge at issue in this case from the others and began to secure it to the dock. *See* Rec. Doc. 56-1 ¶ 24. While the Good Shepard docked, Plaintiff was walking on the right side of the barge to

3

help secure the barge to the dock. *See id.* ¶¶ 25-27. Plaintiff stepped on a tailpipe and fell backwards, suffering injuries. *See id.* ¶¶ 23, 25-29. Under general maritime law, Plaintiff brought a negligence claim against Marquette and SOREC. *See id.* ¶ 17. Plaintiff argues that SOREC was negligent in loading the barge. *See id.* ¶ 17. SOREC then filed the instant motion for summary judgment, arguing that it did not breach its duty of care to plaintiff. *See* Rec. Doc. 35.

**LAW AND ANALYSIS**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. But "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). When the

movant meets its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

"Negligence is an actionable wrong under general maritime law." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010). To succeed on a negligence claim, a "plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *Id.* The instant motion turns on the question of whether Defendant SOREC breached its duty to Plaintiff. *See* Rec. Doc. 35 at 1.

A stevedore, one who loads a boat, owes a duty of "workmanlike performance," *Southern Stevedoring & Contracting Co. v. Hellenic Lines, Ltd.*, 388 F.2d 267, 270 (5th Cir. 1968), which requires it "to perform its [contractual] duties with reasonable safety," *Johnson v. Warrior & Gulf Navigation Co.*, 516 F.2d 73, 76 (5th

5

Cir. 1973). Defendant SOREC offers substantial evidence that it took various steps to ensure the barge was safely loaded before SOREC handed the barge over to Marquette. SOREC baled material into cubes to make it less likely that material would move around or come loose during transport. *See* Rec. Doc. 56-3 at 10-14. SOREC arranged the bales in a "dome" to further mitigate the risk of material falling out of the barge or onto the walkway around the barge. *See id.* at 7-8. After loading was complete, SOREC employees inspected the barge and did not observe any safety hazards. *See id.* at 24-25. Photographs confirm Defendant's testimony that the barge was clean after loading. *See* Rec. Doc. 35-4 at 34-40. The manager of the SOREC facility in Gulfport states in his affidavit that the material on the barge was "typical and customary . . . ."[1] *Id.* at 3.

Because Defendant's evidence consistently demonstrates that Defendant did not breach its duty to load the barge with reasonable care, Plaintiff has the burden of demonstrating that a genuine

---

[1] Plaintiff objects to the affidavit from Chris Covington, the SOREC facility manager, on the grounds that Mr. Covington's opinion lacks foundation because Mr. Covington has no personal knowledge about how the barge was loaded. *See* Rec. Doc. 56 at 1. Plaintiff's argument is unpersuasive. Mr. Covington's affidavit states that he has worked for SOREC since 1989 and has been the manager of the Gulfport facility since 1997. *See* Rec. Doc. 35-4 at 1. Moreover, the affidavit states that Mr. Covington was "was involved with and participated in the inspecting and surveying of the [barge] in May 2015." *Id.* The affidavit goes on to explain that Mr. Covington "personally took the photographs [of the loaded barge] and viewed the [barge] . . . when loading had been completed." *Id.* at 3. There is foundation for Mr. Covington's opinions about the state of the barge after it was loaded because he has personal knowledge of the relevant facts and the experience necessary to state that the load was similar to other barges.

6

issue of material fact exists. *See Matsushita*, 475 U.S. at 586; *Lindsey*, 16 F.3d at 618. Plaintiff fails to meet his burden because he only musters speculation that SOREC breached its duty. *See McCarty*, 864 F.3d at 357 ("This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."). Plaintiff claims that he has presented "facts showing that [SOREC] had knowledge that loads can shift, only baled material should be above the coaming, it is not possible for a tailpipe to break from a bale or compacted car, and Plaintiff tripped on a tailpipe that necessarily was not connected to a compacted car or in a bale as it should have been." Rec. Doc. 56 at 5.

But this is not an accurate statement of the evidence that Plaintiff relies on. First, both Plaintiff and SOREC agree that a barge load could theoretically shift, but Plaintiff cites no evidence that the load in fact shifted on the barge where Plaintiff was injured.[2] Absent such evidence, there is no genuine issue of fact about the stability of the barge load.

Second, Plaintiff implies that there was loose scrap material above the coaming, but Plaintiff offers no evidence to substantiate

---

[2] All that Plaintiff provides is testimony from the captain of the Good Shepard that the barge's load was as high as he has ever seen. *See* Rec. Doc. 56-5 at 5. But this passing discussion does not indicate that the barge's cargo was so high as to be unsafe; the captain does not even state that the cargo was higher than normal, just that this was as high as cargo had been in the past. *See id*.

that claim. *See id.* at 5. The only testimony about the contents of the barge comes from Mr. Covington's deposition. He testified that "there[] [was] no loose scrap just laying across the top of this barge." Rec. Doc. 56-3 at 6. Mr. Covington testified that the only material above the coaming was "baled material" and "tires." *Id.* at 13. Therefore, there is no genuine issue of material fact about the composition of the load on the barge.

Finally, Plaintiff argues that a tailpipe could only have broken free from one of the bales on the barge if the bale was defective. But Plaintiff offers no evidence that the bale was defective. Again, the only evidence comes from Mr. Covington's deposition. Mr. Covington testified that SOREC bales its own material, that each bale weighs around 2,000 pounds, and that "you would need a crane and a grapple to shake a [properly constructed] bale apart . . . ." *Id.* at 10-12. Mr. Covington acknowledged that a bale can fall apart on its own if improperly constructed, but then proceeded to testify that the bales on the barge were "very tight" and had no "density or compaction issues[.]" *Id.* at 12-13. Even the cars on the barge had been compacted in the baler. *See id.* at 15-16. Because Plaintiff has offered no evidence that the bales were defective, there is no genuine issue of fact about the quality of the bales. Therefore, Plaintiff has failed to meet his burden under a specific negligence theory of liability.

In the interest of thoroughness, the Court will also discuss the viability of Plaintiff's claim under a *res ipsa loquitur* theory of liability, even though Plaintiff did not himself raise the argument. "Under *res ipsa loquitur*, a jury is permitted to infer negligence on the part of the one who exercised control over an item where that item has caused the damage and other plausible explanations have been reasonably ruled out." *Naquin v. Elevating Boats, LLC*, 744 F.3d 927, 937 n.43 (5th Cir. 2014) (citing *Brown v. Olin Chem. Corp.*, 231 F.3d 197, 200-01 (5th Cir. 2000)). At the summary judgment stage, a plaintiff must establish three requirements to continue under a *res ipsa* theory:

> [(1)] more probably than not, that the injury was of a kind which ordinarily does not occur in the absence of negligence, [(2)] that the conduct of the plaintiff or of a third person was sufficiently eliminated by the evidence as a more probable cause of the injury, and [(3)] that the indicated negligence was within the scope of the defendant's duty to the plaintiff.

*Brown*, 231 F.3d at 201. Plaintiff fails to meet his burden with respect to, at least, the second requirement.

Plaintiff offers no evidence to rule out other causes of his slip and fall on the boat, which is especially significant because SOREC did not control the barge immediately prior to the accident. First, the day before picking up the barge, high wind and storm warnings were included on the boat log for the Good Shepard. *See* Rec. Doc. 35-7 at 1-2. If these conditions persisted, it could have had an impact on the stability of the barge. But Plaintiff

9

does not rule out this realistic possibility. Second, Marquette has a policy of inspecting new barges for safety hazards before accepting them and did so before picking up this barge. *See* Rec. Docs. 35-6 at 11-14; 35-8 at 5; 56-1 ¶ 11; 61-2 at 11. After accepting the barge, Marquette had sole custody of the barge for at least nine hours. *See* Rec. Doc. 56-1 ¶ 22. During that time, Marquette employees inspected the barge two more times, including once just four hours before Plaintiff's accident. See Rec. Doc. 61-2 at 27. None of these inspections raised concern about how SOREC had loaded the barge. Third, the crew of the Good Shepard reorganized the barges in their tow after leaving the Gulfport facility, and the Captain of the Good Shepard testified that these maneuvers could cause scrap metal to fall onto the walkways (though it had not happened before). *See* Rec. Doc. 61-2 at 19-20, 25. This risk that material could come loose during transit is why Marquette requires barges to be inspected so frequently. *See id.* Finally, the captain of the Good Shepard testified that another member of the crew saw the tailpipe just before Plaintiff's accident, but did not warn Plaintiff that the tailpipe was on the walkway. *See* Rec. Docs. 56-5 at 2; 61-2 at 24.

While a closer question then Plaintiff's specific negligence theory, Plaintiff has not met his burden at the summary judgment stage under a *res ipsa* theory of liability because he has not "sufficiently eliminated" the possibility that other people or

things caused the accident. *See Brown*, 231 F.3d at 200-01 (granting summary judgment in favor of defendant, even though it was reasonable to assume that defendant may have contributed to plaintiffs' injuries, because plaintiff had not produced evidence that defendant's alleged breach was the probable cause of the injury); *cf. Toney v. U.S. ex rel Dept. of Army*, 273 F. App'x 384, 387 (5th Cir. 2008) (denying defendant's motion for summary judgment because plaintiff was able to offer "testimony" that "sufficiently eliminate[d] the conduct of the plaintiff or of a third person as a more probable cause of the injury").

New Orleans, Louisiana, this 8th day of March, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE